### J. & A. SIMPKINSON & Co. *v.* J. B. PIERCE, ET AL.

[Abstract Kentucky Law Reporter, Vol. 5—772.]

**Homestead Right.**

Before one is entitled to claim a homestead, he must have a title legal or equitable to the land, and except in cases where it passes to the wife and widow from the husband the right to a homestead can not exist without title.

**Creditor's Rights.**

Where real estate is purchased and the title taken in the wife's name, if the husband paid a part of the purchase-money, his creditors are entitled to subject his proportionate interest to their demands.

### APPEAL FROM TRIMBLE CIRCUIT COURT.

March 29, 1884.

OPINION BY JUDGE PRYOR:

The theory upon which the counsel for the appellees proceed is that J. W. Pierce was invested with title as against those who are asserting claims as his creditors. If this be the correct view of the rights of the parties then the entire property should have been subjected to the payment of appellants' debt reserving the homestead, as the lots were purchased in 1868 and the debt created some years after. Pierce, however, is not entitled to any homestead for the reason that the proceeding by Branch, who was substituted to the rights of Pierce's vendor, divested the latter of all title. A title legal or equitable to the land is indispensable to this homestead right, and except in cases where it descends or passes to the wife and widow from the husband it can not exist without it. Pierce, failing to pay the purchase-money, the lots were sold and Parker became the purchaser and obtained a conveyance to the property. This divested Pierce of any and all title. He had no right to the homestead because the land was sold for the purchase-money, and Parker being by reason of his purchase

invested with the absolute title, no right to a homestead existed in Pierce either against Parker or the creditors of Pierce. The lots could not have been sold by his creditors or subjected in any way because he had no interest whatever in them. This is on the idea that Parker purchased in good faith and for himself and not Pierce.

The proof shows that Parker made the purchase and paid his own money for the lots. The property was sold publicly under a judgment of the Trimble Circuit Court, and no secret bid was made or trust created by which Parker could have been compelled by Pierce or his family to surrender the title. He may have intended when he sold as much of the property as would reimburse him to secure the balance to Pierce's wife and child, but this could have been done by his voluntary act alone, and not by the coercive mandate of the chancellor. The property was his, paid for by him, and as the proof shows in good faith; and his purpose to secure the property to the wife and children of Pierce should not be construed as a holding in trust for Pierce himself in order that his creditors might reach it. The entire estate had passed from Pierce and his creditors by the sale to Parker in the equity action instituted by Branch; and the subsequent conveyance by Parker to Mrs. Pierce and her child did not revive the rights of creditors or invest Pierce with such a title as would deprive the wife and child of the possession or the right of possession, except to the extent that Pierce had made payments on the property subject to Parker's purchase. Parker, it seems, had sold a portion of the lots and realized all of the money paid by him except about $150. He felt, no doubt, that he ought not to hold the entire property under his purchase, and Pierce being insolvent and his family troubles resulting in a separation between him and his wife, Parker agreed to convey to his wife and child if Pierce would pay him the balance expended by him in his purchase.

Whether the conveyance was made at the instance of Pierce or Parker is immaterial. Parker was a friend of the family, and believed that by securing the wife and child in the property a reconciliation could be effected between the husband and wife, and for this reason executed the deed. But whatever may have been his motive is not material to inquire, as he had the undoubted right, having purchased the property in good faith, to make the convey-

ance to any one he saw proper. Having received, however, from Pierce the balance due him, it was an investment to that extent of Pierce's money in the property that was conveyed to his wife. The appellant was then his creditor, and he had no right to expend his own means so as to obtain a conveyance for the benefit of his family, and the chancellor therefore properly subjected the lot to the payment of the money invested in it by the husband. The husband can not assert any claim to a homestead by reason of this purchase because it was made long after the debt to appellants accrued. The original purchase was made before the debt accrued, but this payment was made long after, and at a time when Pierce had no interest whatever in the property.

The conveyance of 1875 gives to the wife the right for life to the property, or the right to it so long as she remains the wife of Pierce and lives with him, with the fee to the child, Shelby Pierce, and provides that J. B. Pierce is to have a home in it as long as he lives. This provision of the deed in regard to the husband was evidently intended to provide against any action on the part of the wife resulting in turning her husband out of doors or requiring him to leave the place; but was not intended to deprive the wife of the possession. But whatever construction may be given this provision of the deed, the chancellor has only directed the right and interest of Pierce in the property to be sold and nothing more, and it is evident that this will not deprive the wife of the possession or the right to the possession, or prevent the husband from surrendering it to the wife and child at any time.

The attempt of Parker to make a deed to Pierce in 1880 is sufficiently explained, and the statements of Parker, who is disinterested in the result of this controversy, leaves no doubt of an honest purpose on his part, and a desire to save something from the wrecked estate of the husband for the benefit of his wife and child.

The judgment is therefore *affirmed* on the original and cross-appeals. The question of costs on the part of Parker can be rectified below. He is a party without interest and should not be subjected to costs. The lot known as the Scales lot seems to have been purchased by the wife, and whether paid for or not does not appear, and besides it is clearly shown that the title is in parties who are not before the court, and the chancellor should not

have subjected it for two reasons: 1st. Because the title is in those who are not before the court. 2d. If not, the title, so far as the record is concerned, that is, the equitable title, is in the wife and not the husband.

Judgment *affirmed.*

*D. H. French and William Carroll, for appellants.*

*Trout & Peak, for appellees.*

